IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| J. A. T. | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. WGC-12-2284<br>) |
| CAROLYN W. COLVIN<br>Acting Commissioner of Social Security | )<br>)<br>) |
| Defendant. | )<br>) |

**MEMORANDUM OPINION**

Plaintiff J.A.T. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f. The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition. *See* ECF Nos. 5, 7-8.[1] Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 16). No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Motion for Summary Judgment will be granted.

---

[1] The case was subsequently reassigned to the undersigned.

1.  **BACKGROUND**

On May 24, 2007 Plaintiff filed applications for DIB[2] and SSI[3] alleging a disability onset date of July 1, 2006 due to a diabetes, HIV positive, hepatitis C and swelling in legs. *See* R. at 98-105, 122. Plaintiff's applications were denied initially on July 19, 2007. R. at 63-70. On September 10, 2007 Plaintiff requested reconsideration, R. at 71, and on October 22, 2007 the applications were denied again. R. at 72-75. Thereafter, on December 3, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 76. On July 22, 2009 an ALJ convened a hearing. R. at 20-52. Plaintiff was represented by counsel at this hearing. The ALJ obtained testimony from Plaintiff and a vocational expert ("VE"). In the September 30, 2009 decision the ALJ found Plaintiff has not been under a disability from December 31, 2007[4] through the date of the decision. R. at 19. On October 15, 2009 Plaintiff requested a review of the hearing decision. R. at 8-9. On July 28, 2010 the Appeals Council denied Plaintiff's request for review, R. at 1-5, thus making the ALJ's determination the Commissioner's final decision.

On September 14, 2010 Plaintiff filed a civil action in this court. *See* PWG-10-CV-2531, ECF No. 1. Subsequently on December 8, 2010 the Commissioner moved for a remand of the case pursuant to the Social Security Act, Sentence Four, of 42 U.S.C. § 405(g), with the consent of Plaintiff. *Id.*, ECF No. 15; R. at 426-27. Eight days later, on December 16, 2010 the court granted the motion, remanding the case to the Commissioner for further administrative proceedings. *Id.*, ECF No. 16; R. at 425.

---

[2] Plaintiff "has acquired sufficient quarters of coverage to remain insured through June 30, 2011." R. at 13. *See* R. at 118.

[3] Although the transcript of the July 22, 2009 hearing states Plaintiff seeks a claim for a "period of disability and disability insurance benefits and supplemental security income benefits," R. at 20, the September 30, 2009 decision identifies Plaintiff's claim as for a "period of disability and disability insurance benefits" only. R. at 13.

[4] Prior to the hearing on July 22, 2009 Plaintiff and her counsel submitted a request to amend her alleged onset date to December 31, 2007. R. at 22, 117.

On February 18, 2011 the Appeals Council remanded the case to the ALJ, stating,

> The U.S. District Court for the District of Maryland (Civil Action Number 1:10-cv-02531) has remanded this case to the Commissioner of Social Security for further administrative proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act.
>
> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for resolution of the following issues:
>
> - Page 3 of the hearing decision states that the claimant's depression was not severe. The Administrative Law Judge discussed the claimant's depression (page 4) and concluded that there was no evidence in the medical records of the claimant having any limitations associated with depression. However, the decision does assess the severity or effects of the claimant's depression, providing the rationale for "B" criteria using the special technique described in 20 CFR 404.1520a and 416.920a. Further evaluation of the severity of the claimant's mental impairment is necessary.
>
> - Page 3 of the hearing decision states that the claimant's back pain was a severe impairment but her diabetes and hepatitis C were not severe impairments. Since pain is a symptom and not an impairment, and a symptom is not a medically determinable impairment, the claimant's back pain should not be included as a severe impairment. Social Security Ruling 96-4p and 20 C.F.R. 404.1529 and 416.929. However, the evidence shows that the claimant takes several different medications for her diabetes, including insulin injections. (Exhibits 11F and 12F). In addition, the claimant's treating physician, Dr. Gregory Taylor, stated that the claimant's severe weakness and fatigue resulted from her hepatitis C (Exhibit[s] 10F and 15F). The decision does not include an adequate evaluation of this medical evidence in finding that the claimant's diabetes and hepatitis C were not severe impairments. The claimant's back pain should be removed as a severe impairment, and the severity of the claimant's physical impairments should be properly evaluated.
>
> - The hearing decision, Finding No. 3, indicates that one of the claimant's severe impairments is that of obesity, and the evidence of record shows that claimant has a consistent pattern of obesity. The claimant was diagnosed by her treating physician as obese (Exhibits 2F and 11F). Though the Administrative Law Judge identified obesity as a severe impairment, the decision does not include an evaluation of the impact of the claimant's obesity.

Since the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately, consideration needs to be given to the limitations or cumulative effects of the obesity upon claimant's applicable medical impairments, claimant's residual functional capacity, as well as the claimant's ability to perform past relevant work and other work that exists in significant numbers in the national economy (Social Security Ruling 02-1p).

- The medical evidence in the record includes March 6, 2008 and April 29, 2009 medical assessment reports prepared by the claimant's treating physician, Dr. Gregory Taylor. In both reports, Dr. Taylor stated that the claimant did not have the capacity necessary to remain in a seated position for six hours out of an eight-hour day and could not remain on her feet for two hours in an eight-hour day. Dr. Taylor also stated that the claimant did not have the strength and endurance necessary to lift objects weighing up to ten pounds on a sustained, regular, and continuing basis (Exhibits 10F and 15F). The decision does not include a discussion of Dr. Taylor's March 6, 2008 opinion (Exhibit 10F) and does not mention Dr. Taylor's April 29, 2009 opinion (Exhibit 15F) regarding the claimant's physical limitations. In addition, the Administrative Law Judge did not assess any weight to Dr. Taylor's opinion as required by Social Security Ruling 96-2p. The treating source opinion should be evaluated under the factors in 20 CFR 404.1527(d) and 416.927(d).

Upon remand the Administrative Law Judge will:

- Further evaluate the severity of the claimant's physical impairments, including her back impairment, diabetes and hepatitis C. Further evaluate the claimant's obesity in accordance with Social Security Ruling 02-1p. Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed physical and mental limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating

4

source opinions, including the opinions of Gregory Taylor, M.D., pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairment (20 CFR 404.1512 and 416.912).

- If necessary, further evaluate the claimant's ability to do her past relevant work at the fourth step of the sequential evaluation process by comparing the claimant's residual functional capacity to the physical and mental demands of the work she has done in the past (Social Security Rulings 82-61 and 82-62; 20 CFR 404.1520(e) and 416.920(e)).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12 and 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

The claimant filed applications for Title II and Title XVI benefits (Exhibits 1D and 2D). The hearing decision, however, addresses only the claimant's application for Title II benefits. The record is unclear as to whether the claimant's application for Title XVI benefits was resolved. Although the claimant did not select Title XVI on the Form 501 for requesting a hearing (*see* Exhibit 6B), the claimant's Title XVI claim should be fully adjudicated.

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

R. at 430-32.

A supplemental hearing was held on January 18, 2012 in accordance with the Appeals Council's Remand. Plaintiff was again represented by counsel. The ALJ obtained testimony from Plaintiff and a VE. R. at 396-424. In the April 26, 2012 decision the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2006[5] through the date of the decision. R. at 395. On May 25, 2012 counsel for Plaintiff filed exceptions to the unfavorable decision. R. at 377-79. On July 11, 2012 the Appeals Council denied Plaintiff's request for review, R. at 373-76, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

In the decision of September 30, 2007, the ALJ evaluated Plaintiff's claim for DIB[6] using the sequential evaluation process set forth in 20 C.F.R. § 404.1520. Plaintiff bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. If Plaintiff's claim fails at any step of the process, the ALJ does not advance to the subsequent steps. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

At step one the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2007, her amended alleged onset date. R. at 15. The ALJ concluded at step two that Plaintiff's asymptomatic HIV infection, obesity and back pain were severe impairments. Also, at step two, the ALJ determined Plaintiff has the following non-severe impairments:

---

[5] The ALJ erroneously listed the **original** alleged onset date of disability. At the January 18, 2012 supplemental hearing the ALJ acknowledged Plaintiff had amended her onset date to December 31, 2007. R. at 398. Further, in the April 26, 2012 decision, the ALJ, *three times*, acknowledged December 31, 2007 as Plaintiff's onset date of disability. *See* R. at 384 ("At the first hearing, the claimant, fully advised by her attorney, amended her alleged onset of disability to December 31, 2007."), 385 ("After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from December 31, 2007, through the date of this decision."), 386 ("**2. The claimant has not engaged in substantial gainful activity since December 31, 2007, the alleged onset date (20 CFR 404.1571** *et seq.,* **and 416.971** *et seq.***).**").

[6] As noted by the Appeals Council the ALJ failed to consider Plaintiff's application for Title XVI benefits. R. at 432.

diabetes, Hepatitis, status post uterine cancer and hysterectomy and depression. At step three the ALJ found Plaintiff does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically found Plaintiff's HIV does not meet the requirements of Listing 14.08. R. at 17.

Next the ALJ considered Plaintiff's residual functional capacity ("RFC"). The ALJ determined Plaintiff has the RFC to perform the full range of medium work as defined by 40 C.F.R. § 404.1567(c). Finally, at step four, the ALJ found Plaintiff is capable of performing her past relevant work as a security guard and as a housekeeper. R. at 18.

After the supplemental hearing on January 18, 2012, the ALJ re-evaluated Plaintiff's claim for DIB and evaluated Plaintiff's claim for SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one the ALJ found Plaintiff has not engaged in substantial gainful activity since December 31, 2007[7], the alleged onset date. R. at 386. At step two the ALJ determined Plaintiff has the following severe impairments: depression, diabetes, HIV positive and obesity. R. at 387. Additionally, at this step, the ALJ identified Plaintiff's non-severe impairments: "Hepatitis, history of deep vein thrombosis and pulmonary embolism[,] anemia and status post uterine cancer and hysterectomy." *Id.*

At step three the ALJ found Plaintiff does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically considered Listing 14.08K, *Human immunodeficiency virus (HIV) infection* and the opinions of Plaintiff's treating physician, Dr. Taylor who opined Plaintiff meets the listing. The ALJ determined Plaintiff's HIV does not meet the requirements of Listing 14.08K.

---

[7] "The claimant earned $196.80 in 2008. (Exhibit 9D). This work activity does not rise to the level of substantial gainful activity." R. at 386.

7

In evaluating Plaintiff's depression, the ALJ applied the special technique as outlined in 20 C.F.R. §§ 404.1520a, 416.920a. The ALJ assessed Plaintiff's depression in light of Listing 12.04, *Affective Disorders*. First the ALJ considered the "paragraph B" criteria. He found Plaintiff has *mild* restrictions of activities of daily living, *mild* difficulties in social functioning, *moderate* difficulties in concentration, persistence or pace and *no* episodes of decompensation. R. at 388-89. "Because the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." R. at 389.

Next the ALJ considered the "paragraph C" criteria. He determined the evidence of record fails to establish the presence of such criteria. "[N]o repeated episodes of decompensation, each of extended duration have been established in the records. No allegation has been made, nor evidence shown, that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation. There is no evidence in the record to suggest that the claimant has a current history of at least one year[']s inability to function outside a highly supportive living arrangement." *Id.*

As for Plaintiff's obesity, the ALJ noted this condition, by itself, is not medically equivalent to a listed impairment. "The claimant retains the ability to ambulate effectively. There is no cardiovascular or pulmonary impairment at a Listing level. Furthermore, her obesity in combination with her other impairments, does not increase the severity or functional limitations of the other impairments to a Listing level." R. at 389-90.

Next the ALJ determined Plaintiff's RFC.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is further limited to: occasional balancing, crouching, crawling,

> kneeling, stooping, and climbing ramps, stairs, ladders, ropes or scaffolds; is limited to understanding, remembering, and carrying out simple instructions; and is limited to making judgments on simple-work related decisions only.

R. at 390.

Finally, at step four, the ALJ found Plaintiff is capable of performing her past relevant work as a gate guard and housekeeper/cleaner both as she actually performed and as generally performed. Accordingly, the ALJ concluded Plaintiff has not been under a disability, as defined by the Act, from December 31, 2007 through the date of the decision.

**3.     Standard of Review**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456. This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id.*

**4.     Discussion.**

Plaintiff alleges multiple errors by the ALJ. The court addresses those issues in accordance with the sequential evaluation process.

9

A. *Failure to find certain medical conditions severe at step two*

Plaintiff asserts the ALJ erred by failing to find her deep vein thrombosis, pulmonary embolism and anemia as severe impairments at step two. Plaintiff argues the threshold for finding an impairment severe at step two is a slight abnormality and these conditions obviously qualify as more than slight abnormalities. "[T]he ALJ's step 2 errors inevitably infect the analysis at steps 3, 4, and 5, justifying a remand of this claim for further proceedings." ECF No. 14-1 at 43.

Step two of the sequential evaluation process requires a claimant to prove (a) she has a medically determinable physical or mental impairment or combination of impairments (b) that meets the duration requirements. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). To satisfy the first prong of severity, a claimant must demonstrate her impairment "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 404.1508, 416.908. As for the duration requirement, a claimant must demonstrate, if the impairment is not expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§ 404.1509, 416.909.

Critical to the determination of whether an impairment is severe is the effect of the impairment on an individual's physical or mental abilities to perform basic work activities.

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a

determination that an individual does not have a severe medical
impairment.

SSR 85-28[8], 1985 WL 56856 at *3 (1985).

The ALJ assessed Plaintiff's deep vein thrombosis, pulmonary embolism and anemia as follows.

> In October 2010, the claimant was hospitalized with deep vein thrombosis that led to a pulmonary embolism. She was subsequently treated with Lovenox and Coumadin. During a follow up appointment a week later she reported her breathing was much improved and her leg felt better. She did still have some pain in the mid chest area. (Exhibit 25F at 27.) [][9]
>
> The claimant had an episode of symptomatic anemia that required overnight hospitalization in October 2011. She was hospitalized with complaints of fatigue and shortness of breath lasting a few weeks. She reported an episode of severe nosebleed that lasted an entire day with blood clots. After having a transfusion of one unit packed red blood cells, the claimant's symptoms improved dramatically. (Exhibit 18F.) There is no indication in the record that the claimant's symptomatic anemia lasted 12 consecutive months; therefore, it is non-severe.

R. at 387.

The most recent medical record discussing Plaintiff's deep vein thrombosis is the September 24, 2011 consultative examination by Ben Oteyza, M.D. The ALJ summarized Dr. Oteyza's report noting, Plaintiff "reported a history of deep vein thrombosis, for which she was hospitalized for three days. She was maintained on Coumadin. She still develops swelling of the lower extremities by the end of the day and feels aches and pains in her ankles. (Exhibit 16F.)." R. at 394; *see* R. at 490. Under "Impression" Dr. Oteyza identified "3. Swelling in the legs with history of past deep vein thrombosis. Still needs to continue on the Coumadin." R. at 493.

The ALJ's decision failed to discuss the most recent medical record concerning Plaintiff's deep vein thrombosis and pulmonary embolism at step two. The court thus cannot

---

[8] Titles II and XVI: Medical Impairments That Are Not Severe

[9] The sentence begins "As of". The ALJ's analysis cannot be discerned from such a phrase.

11

discern the ALJ's rationale for finding these related impairments as non-severe versus severe. Even if the ALJ should have classified these impairments as severe, this error does not automatically constitute reversible error. The Social Security Regulations mandate consideration of all impairments, both severe and non-severe, at the succeeding steps of the sequential evaluation process. "In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923.

Finally, Plaintiff suffers from a number of impairments including diabetes which the ALJ found as severe. Plaintiff testified about symptoms caused by her diabetes.

> Q: Why do you believe you're unable to work?
>
> A: Oh, boy, I stays tired and my legs bothers me. They swells up and it's hard for me to walk and when they swell up like that.
>
> Q: Now how long have you been a diabetic?
>
> A: About 20 years, a little over 20 years.
>
> \*  \*  \*
>
> Q: And has the diabetes affected your energy level?
>
> A: Yes, it has.
>
> Q: How so?
>
> A: It keeps me tired.
>
> Q: Has the diabetes affected your hands and your feet?
>
> A: They swells up on me.

R. at 407-08. The court finds no reversible error by the ALJ at step two.

B. *Physical RFC finding not based on acceptable medical source*

The ALJ determined Plaintiff's RFC is limited to light work with various postural limitations. This RFC determination however is not based on any acceptable medical opinion and therefore Plaintiff contends, a reversal is warranted.

First, Plaintiff notes the ALJ assigned limited weight to the State agency medical consultants on the basis that "the consultants did not have the benefit of the longitudinal record before" the ALJ. R. at 394. The State agency medical consultant at the initial stage determined Plaintiff has the physical RFC to perform medium exertional work without any postural limitations. R. at 257-58, 263. Identically, the State agency medical consultant at the reconsideration stage determined Plaintiff has the physical RFC to perform medium exertional work without any postural limitations. R. at 287-88, 293. Plaintiff asserts, according to Social Security Ruling 96-6p[10], the State agency medical consultants are considered experts and thus their opinions cannot be ignored. ECF No. 14-1 at 34. Plaintiff contends the ALJ's decision does not comport with the Regulations or ruling.

The ALJ committed no reversal error by not accepting, without any reservation, the opinions of the State agency medical consultants. Social Security Ruling 96-6p states, "Administrative law judges and the Appeals Council are *not bound by findings made by* State agency or other program physicians and psychologists, but *they may not ignore these opinions and must explain the weight given to the opinions in their decisions.*" SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996) (emphasis added). Moreover, the opinions of State agency medical consultants "can be given weight *only insofar as they are supported by evidence in the case record*[.]" *Id.* (emphasis added). The court finds the ALJ complied with Social Security Ruling

---

[10] Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence

96-6p. Further, contrary to Plaintiff's assertion, a claimant's RFC is **not** a medical issue regarding the nature and severity of a claimant's impairment(s) but an administrative finding determined by an adjudicator such as an Administrative Law Judge. The final responsibility for deciding Plaintiff's RFC is reserved to the Commissioner, not the State agency medical consultants. *See* SSR 96-5p[11], 1996 WL 374183, at *2 (Jul. 2, 1996).

Second, Plaintiff contends the ALJ failed to accord controlling weight to the opinions of her treating physician, Dr. Taylor. "[T]he ALJ disregarded the RFC assessments of [Plaintiff's] treating physician, Dr. Gregory Taylor, without proper justification." ECF No. 14-1 at 35. Moreover, Dr. Taylor opined Plaintiff meets Listing 14.08K for HIV infection. The ALJ disregarded this opinion. Plaintiff asserts her disability claims should have been allowed at step 3 of the sequential evaluation process. ECF No. 14-1 at 38.

A treating physician's opinion, no matter how long such a physician has been treating a claimant, is not automatically entitled to controlling weight. Controlling weight is accorded when all of the following factors are present:

> 1. The opinion must come from a "treating source," as defined in 20 CFR 404.1502 and 416.902. Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to "controlling weight."
>
> 2. The opinion must be a "medical opinion." Under 20 CFR 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. (See SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner.")
>
> 3. The adjudicator must find that the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques. The adjudicator cannot decide a

---

[11] Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner

case in reliance on a medical opinion without some reasonable support for the opinion.

4. Even if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record.

SSR 96-2p[12], 1996 WL 374188, at *2 (Jul. 2, 1996).

The ALJ explains in detail why Dr. Taylor's opinion about Plaintiff's alleged extreme physical limitations are not supported by his <u>own</u> treatment notes or the remainder of the record evidence. *See* R. at 393. The ALJ noted, "[t]he claimant simply does not complain of the fatigue that Dr. Taylor seems to base the majority of his opinion on." *Id.* Moreover, the determination regarding Plaintiff's RFC is a matter reserved to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. Substantial evidence supports the ALJ disregarding Dr. Taylor's opinion concerning Plaintiff's physical RFC.

Regarding the lack of controlling weight assigned to Dr. Taylor's opinion, the ALJ articulated the basis for this determination.

> I reject [the] opinion [that the claimant has marked restrictions in both activities of daily living and in concentration, persistence or pace] and give it no weight as it is inconsistent with the record as a whole and inconsistent with a Medical Assessment Report completed by Dr. Taylor on [April 29, 2009]. In that report Dr. Taylor stated that the intensity and duration of the claimant's symptoms, along with any side effects of her medication, would not cause substantial restrictions in her capacity for sustained mental alertness, concentration and persistence in carrying out simple job duties in a competitive work environment over a regular eight-hour workday. (Exhibit 15F at 2). Then, on November 7, 2011, Dr. Taylor reaffirmed his statement that the intensity and duration of the claimant's symptoms, along with any side effects of her medication, would not cause substantial restrictions in her capacity for sustained mental alertness, concentration and persistence in carrying out simple job duties in a competitive work environment over a regular eight-hour workday. This is in direct

---
[12] Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions

> conflict with the assertion that she has marked impairment of concentration, persistence or pace.

R. at 388.

Finally, even if the ALJ assigned controlling weight to Dr. Taylor's opinion regarding Plaintiff's mental or physical RFC, controlling weight cannot be assigned to Dr. Taylor's opinion that Plaintiff meets a Listing.

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

SSR 96-5p, 1996 WL 374183, at * 2.

### C. *Alleged incomplete physical RFC finding*

Plaintiff contends the ALJ failed to conduct "a function-by-function analysis to determine [Plaintiff's] remaining physical RFC despite her severe limitations[]" in accordance with Social Security Ruling 96-8p.[13] ECF No. 14-1 at 34. This ruling states in pertinent part,

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) [FN7]. . . .

SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996). Footnote 7 refers to footnote 2 which states in pertinent part, "[t]he ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential

---

[13] Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims

evaluation process." *Id.* at *8. The ALJ determined Plaintiff is not disabled at *step 4*. Additionally, the court does not interpret Social Security Ruling 96-8p as *mandating* a function-by-function analysis in detail in the decision. The ALJ complied with this ruling by providing a narrative discussion describing the evidence supporting his RFC determination. *See* R. at 390-94.

D. *Alleged incomplete and improper physical and mental RFC findings*

Plaintiff alleges additional errors with both the physical and mental RFC findings. First, regarding the physical RFC, it is undisputed the ALJ found Plaintiff retains a physical RFC to perform light work. *See* R. at 390. In reviewing the evidence of record and discussing the fourth step, the ALJ wrote, "[t]he claimant's residual functional capacity is for at least the full range of medium exertion." R. at 395. The court finds the reference to "medium work" is a typographical error. This is apparent from the remainder of the paragraph where the ALJ discusses the VE's testimony of Plaintiff's past relevant work as *light exertion*.

Second, Plaintiff challenges the ALJ's allegedly assigning significant weight to some portions of Dr. Olga Rossello's opinion and according little weight to other portions of the opinion. Plaintiff, in particular, objects to the ALJ assigning little weight to Dr. Rossello's opinion of Plaintiff's Global Assessment Functioning ("GAF") of 45. ECF No. 14-1 at 39. The Commissioner addresses this issue squarely in its cross-motion for summary judgment, *see* ECF No. 16-2 at 24-25, which the court adopts in finding no error.

E. *Alleged incomplete and inconsistent finding at step four*

The court has considered Plaintiff's arguments and the Commissioner's response and finds no substantial error by the ALJ.

17

F. *Failure to resolve discrepancy between VE's testimony and the Dictionary of Occupational Titles ("DOT")*

Lastly Plaintiff highlights an alleged discrepancy, the Dictionary of Occupational Titles considers her past relevant work as a gate guard as an SVP[14] of 3, meaning semi-skilled work, but the VE testified, despite the SVP classification, such a job can be performed by someone limited to unskilled work. ECF No. 14-1 at 41-42. In the decision the ALJ wrote, "[t]he Vocational Expert testified that her work as a gate guard is classified as light exertion, with a SVP of three. However, the Vocational Expert persuasively testified that he would classify this work as unskilled." R. at 395.

The VE testified that the position Plaintiff held the longest is *comparable* to a gate guard. R. at 422. "Information about a particular job's requirements or about occupations not listed in the DOT may be available . . . from a VE's . . . experience in job placement or career counseling." SSR 00-4p[15], 2000 WL 1898704, at *2 (Dec. 4, 2000). The court finds no reversible error.

5. **Conclusion.**

Substantial evidence supports the decision that Plaintiff is not disabled. Accordingly, Defendant's Motion for Summary Judgment will be granted.

Date: February 27, 2014 _____/s/_____
WILLIAM CONNELLY
UNITED STATES MAGISTRATE JUDGE

---

[14] Specific Vocational Preparation

[15] Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions